UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MITCHELL, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>AUTO CLUB LIFE INSURANCE COMPANY, a business entity of unknown form; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.:  20cv1312 DMS (WVG)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on Defendant's motion for summary judgment. Plaintiff filed an opposition to the motion, and Defendant filed a reply. After a thorough review of the issues, the motion is denied.

**I.**

**BACKGROUND**

The facts giving rise to this case are undisputed. In December 1999, about a year after they were married, Peter and Michelle Mitchell purchased a term life insurance policy from Defendant Auto Club Life Insurance Company with a $150,000 benefit on Peter's life and naming Michelle as the beneficiary ("the Policy"). Premiums on the Policy were

///

1

automatically deducted from a joint checking account maintained by the Mitchells at San Diego County Credit Union ("SDCCU").

In February 2019, Michelle filed a petition for marital separation in San Diego Superior Court. The summons that issued after Michelle's filing included the following standard automatic restraining order forbidding either party to the marriage from "cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability, held for the benefit of the parties and their minor children[.]" (Decl. of Elise Klein in Supp. of Mot., Ex. J at 2-3.[1]) Following that filing and service of the summons and petition on Peter, Peter filed his Separate Property Declaration listing the Policy as a marital asset. (Ex. 3 in Supp. of Opp'n to Mot. at 13-14.)

While the dissolution proceeding was pending, the Mitchells continued living together under a "nesting" arrangement. During that time, Michelle and Peter continued to deposit their respective earnings and income into the SDCCU account. Peter continued to pay the household bills out of that account, and Michelle believed Defendant was continuing to deduct the monthly Policy premiums from the account, as well.

Those premiums were deducted for the months of April, May, June, July, and August 2019. However, on July 31, 2019, unbeknownst to Michelle, Peter called Defendant and requested to "terminate" the Policy. (Decl. of Daniel Fox in Supp. of Mot. ("Fox Decl."), Ex. C.) Although the Index to the Policy identifies a "Right to Cancel" provision at page 1, (Fox Decl., Ex. B at 3), there is no "Right to Cancel" provision in the Policy. There is, however, a General Provision concerning "Elections, Designations, Changes and Requests," which states "All elections, designations, changes and requests must be in a written form satisfactory to us and will become effective only after they have been approved by us." (*Id.* at 9.) Despite that general policy provision, Defendant canceled the

---

[1] The page numbers cited refer to the numbers assigned by the Court's CM/ECF system.

Policy over the phone pursuant to Peter's verbal request. (Fox Decl., Ex. C.) Defendant claims it sent a letter to Peter on August 13, 2019, confirming that the Policy had been cancelled, effective August 23, 2019. (Fox Decl., Ex. E.)

Less than four months later, on December 11, 2019, while the dissolution proceedings were still pending, Peter died in an automobile accident. Michelle was in contact with the Automobile Club of Southern California on the automobile claim (as Auto Club also provided the Mitchells with automobile insurance), and during those contacts Michelle "asked how to go about making a claim on the life insurance policy." (Decl. of Michelle Mitchell in Supp. of Opp'n to Mot. ¶10.) After that inquiry, Michelle learned that the Policy had been canceled. (*Id.*) Michelle was shocked to hear that, and proceeded to request via email, phone and regular mail that Defendant pay out the benefits on the Policy. On April 15, 2020, Defendant sent Michelle a letter stating no benefits were owed on the Policy because it had been canceled. (Fox Decl., Ex. F.)

On June 6, 2020, Michelle filed the present case in San Diego Superior Court. In the Complaint, she alleges claims for (1) breach of contract, and (2) breach of the covenant of good faith and fair dealing. Defendant removed the case to this Court on July 10, 2020.

## II.

## DISCUSSION

Defendant moves for summary judgment on the Complaint on the ground it properly canceled the Policy. To the extent the Court disagrees with that argument, Defendant asserts it is entitled to summary judgment on the bad faith claim based on the genuine dispute doctrine, and because there is no evidence of bad faith. To the extent the Court does not grant Defendant's request for summary judgment on the bad faith claim, Defendant argues it is entitled to judgment on Plaintiff's request for punitive damages because there is no evidence Defendant acted with oppression, fraud, or malice.

### A.  Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     Breach of Contract**

Plaintiff's first claim is for breach of contract. To prevail on a claim for breach of contract, Plaintiff must show the existence "of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1031 (2009) (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1489 (2006)). Here, Defendant argues, essentially, that Plaintiff cannot establish the first element, the existence of a contract, because the Policy was canceled before Peter's death. Plaintiff disputes that the cancellation of the Policy was valid and effective.

///

In support of its argument that the Policy was canceled properly, Defendant relies first on a provision of the Policy entitled "Expiration." This provision states:

This policy will expire on the earliest of:

- The renewal date shown in the SCHEDULE OF BENEFITS AND PREMIUMS; or
- When the policy lapses; or
- When the policy is converted; or
- When you write us and ask that we cancel it.

(Fox Decl., Ex. B at 8.) Here, Peter did not "write" Defendant, according to the "plain, ordinary, popular, or legal meaning" of that term. *Ermolieff v. R.K.O Radio Pictures*, 19 Cal. 2d 543, 550 (1942). *See also AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) (stating the "'clear and explicit'" meaning of the written provisions of a contract, "interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' controls judicial interpretation.") (citations omitted); *Kings County Packing Co. v. Sunland Sales Co-Operative Ass'n*, 100 Cal. App. 126, 133 (1929) ("It is so well established as not to require the citation of authority that contracts are to be construed to give the true intent of the parties and that words are to be given their common and accepted meaning.") Rather, Peter called Defendant and verbally requested that the Policy be "terminated." (Fox Decl., Ex. C.)

Defendant ignores the plain and ordinary meaning of the term "write," and instead argues Peter's verbal request was a "writing" under the California Uniform Electronics Transactions Act ("CUETA"). This argument is without merit. There is nothing in the Policy to indicate the CUETA applies to the Policy. Indeed, by its terms, the CUETA "applies to electronic records and electronic signatures relating to a transaction[,]" Cal. Civ. Code § 1633.3(a), neither of which has been shown to be at issue in this case. Thus, the CUETA does not show that Defendant's cancellation of the Policy was valid and effective.

///

Next, Defendant argues that even if Peter was required to "write" to Defendant, as that term is commonly understood, and ask that the Policy be canceled, Peter waived that requirement when he called Defendant instead. To prevail on this argument, Defendant must prove "'by clear and convincing evidence that does not leave the matter to speculation'" that Peter intentionally relinquished "'a known right after knowledge of the facts.'" *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995) (quoting *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107-08 (1962)) (quotation marks omitted). It has not met that burden here. Indeed, the only evidence Defendant relies on is the fact of Peter's phone call, which is not evidence that Peter knew the Policy required a writing to effect a cancellation, nor evidence that he intentionally relinquished that requirement. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's breach of contract claim.[2]

## C.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second claim for relief alleges a breach of the covenant of good faith and fair dealing. "[T]he covenant of good faith and fair dealing is implied in every contract, the breach of which is a tort." *Hubka v. Paul Revere Life Ins. Co.*, 215 F.Supp.2d 1089, 1092 (S.D. Cal. 2002) (citations omitted). The covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefit of the agreement." *Hanson v. Prudential Ins. Co.*, 783 F.2d 762, 766 (9th Cir. 1986) (citations omitted). It "has 'particular application' to insurers because they are 'invested with a discretionary power affecting the rights of another,' and the insurance business is 'affected with a public interest and offers services of a quasi-public nature[.]'" *Amadeo v. Principal Mutual Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) (citations omitted).

---

[2] In its opening brief, Defendant raised another argument in support of its request for summary judgment on the breach of contract claim, namely that the Policy lapsed when Peter and Michelle failed to pay the premiums. Defendant withdrew that argument in its reply brief, thus the Court will not address that argument further.

"In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). *See also Adams v. Allstate Ins. Co.*, 187 F.Supp.2d 1207, 1214 (C.D. Cal. 2002) (same). Here, Defendant argues Plaintiff cannot satisfy the second element because there was a genuine dispute about "whether the claim should have been covered." (Mem. of P. & A. in Supp. of Mot. at 14.) Defendant also asserts there is no evidence it acted in bad faith.[3]

Although the issue of reasonableness "is ordinarily a question of fact[,]" *Highlands Ins. Co. v. Continental Casualty Co.*, 64 F.3d 514, 517 (9th Cir. 1995) (citing *Walbrook Ins. v. Liberty Mut. Ins.*, 5 Cal. App. 4th 1445, 1454 (1992)), the genuine issue, or genuine dispute as to coverage, doctrine allows a court to "'conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability.'" *Guebara*, 237 F.3d at 992 (quoting *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994)). This doctrine allows a court to treat reasonableness as a question of law if there is a genuine dispute as to coverage. "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Insurance Company*, 322 F.3d 660, 669 (9th Cir. 2003) (citation omitted).

Here, Defendant argues there was a genuine dispute as to coverage because the undisputed material facts show: (1) Peter asked to cancel the Policy, (2) Defendant's policy servicer sent a letter to Peter confirming cancellation of the Policy, and (3) Plaintiff did not

///

---

[3] Defendant also argues Plaintiff cannot meet the first element of her bad faith claim because the Policy was canceled before Peter's death. For the reasons set out above, the Court rejects that argument.

request that Defendant notify her in the event Peter made any changes to the Policy.[4] However, these facts[5] do not demonstrate Defendant's denial of the claim was in good faith or based on reasonable grounds such that the genuine dispute doctrine would apply. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007) (citations omitted) ("A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds.")  Defendant has not shown there is a genuine dispute here about policy interpretation, as there was no provision in the Policy governing the right to cancel.[6]  Indeed, the only provision that appears to potentially cover Peter's request to cancel the Policy is a general provision concerning "Elections, Designations, Changes and Requests," which states, "All elections, designations, changes and requests *must be in a written form* satisfactory to us and will become effective only after they have been approved by us." (*Id.* at 9) (emphasis added).  If anything, that provision indicates Defendant's denial of the claim was neither reasonable nor in good faith, not that there was a genuine dispute about policy language.[7]

To the extent Defendant argues there was a dispute about the interpretation of "writing" as that term is used in the Policy, that dispute is not genuine for the reasons set

---

[4] Defendant also relies on the Mitchells' failure to pay the premiums on the Policy for the months of September through December 2019, and Peter's failure to request that the Policy be reinstated.  Both of these facts go the issue of lapse, which was not a basis for Defendant's denial of Plaintiff's claim, and which argument Defendant has now withdrawn.  Accordingly, the Court does not consider these facts in determining whether Defendant is entitled to the benefit of the genuine dispute doctrine.

[5] Defendant asserts these facts are undisputed, and as to facts (1) and (3), the Court agrees.  However, Plaintiff disputes fact (2), and specifically asserts Defendant's letter to Peter was "a sham."  (Mem. of P. & A. in Supp. of Opp'n to Mot. at 12.)  Thus, not all of these facts are undisputed.

[6] As stated above, the Index of the Policy identifies a "Right to Cancel" provision on page 1, (Fox Decl., Ex B at 3), but there is no corresponding provision in the Policy.

[7] The same may be said about the "Expiration" provision of the Policy, which Defendant relied on in denying Plaintiff's claim. (*See* Fox Decl., Ex. F at 8) (stating Policy may expire "*when you write us and ask that we cancel it*.") (emphasis added).

out above. As discussed, there is nothing in the Policy to indicate the term "writing" should be construed other than in accordance with its plain and ordinary meaning, which would not include a phone call. There is also no evidence that the Policy in general or the term "writing" in particular would be governed by or interpreted in light of the CUETA. Thus Defendant is not entitled to summary judgment on Plaintiff's bad faith claim based on the genuine dispute doctrine.

Defendant is likewise not entitled to summary judgment on this claim based on its argument that Plaintiff has failed to produce any evidence in support. Contrary to Defendant's argument, Plaintiff has presented evidence, which, construed in her favor, indicates that any request to cancel the Policy must have been in writing. It is undisputed Peter did not submit a written request to cancel the Policy. Nevertheless, Defendant proceeded with the cancellation based solely on Peter's verbal request after verification of his identity. Defendant's disregard and failure to follow the terms of its own Policy, and its reliance on that conduct in denying Plaintiff's claim, is sufficient to raise a genuine issue of material fact on the bad faith claim. Accordingly, Defendant's request for summary judgment on that claim is denied.[8]

**D.   Punitive Damages**

Defendant's final argument is that it is entitled to summary judgment on Plaintiff's request for punitive damages. Specifically, Defendant asserts there is no evidence it acted with oppression, fraud, or malice in denying Plaintiff's claim.

"Punitive damages may be awarded for tortious bad faith if the insurer was also guilty of oppression, fraud, or malice." *Kelly v. Provident Life & Acc. Ins. Co.*, No. 04CV807-AJB BGS, 2011 WL 2680475, at *12 (S.D. Cal. July 8, 2011) (citing Cal. Civ. Code § 3294). "The acts constituting malice, oppression or fraud must be proven by clear

///

---

[8] In light of this ruling, the Court also rejects Defendant's argument that Plaintiff is not entitled to recover her attorneys' fees.

and convincing evidence." *Id.* (citing *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1080 (2007)).

"Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury." *Amadeo*, 290 F.3d at 1165 (citing *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 821 (1979). "Summary judgment on a claim for punitive damages is proper only 'when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression.'" *Storrer v. Paul Revere Life Ins. Co.*, No. C 97-04014 SBA, 2009 WL 1916714, at *2 (N.D. Cal. July 1, 2009).

In this case, Plaintiff's request for punitive damages is based, first and foremost, on her bad faith claim.

> While it is true that a breach of the implied covenant of good faith and fair dealing does not automatically give rise to punitive damages, courts have found that a claim for punitive damages should be considered at the same time as the bad faith claim, since the issues germane to both may be interrelated.

*Id.* Furthermore, when viewed in Plaintiff's favor, the evidence discussed above and in the record raises a genuine issue of material fact as to whether Defendant's conduct in handling and denying Plaintiff's claim involved malice, oppression, or fraud. *See Amadeo*, 290 F.3d at 1165 (denying motion for summary judgment on punitive damages because there was sufficient evidence in the record that denial of claim "'was not simply the unfortunate result of poor judgment,'" but rather resulted from defendant's "plainly unreasonable interpretation of its policy and the deliberate restriction of its investigation in a bad faith attempt to deny benefits due to" plaintiff); *Kelly*, 2011 WL 2680475, at *12 (denying motion for summary judgment on punitive damages because "if a jury makes a determination that Provident denied Plaintiff's claim in bad faith, the trier of fact could also conclude that, in doing so, Provident was guilty of malice, oppression or fraud."). Accordingly, Defendant's request for summary judgment on Plaintiff's request for punitive damages is denied.

/ / /

/ / /

## III.

## CONCLUSION AND ORDER

For these reasons, the Court denies Defendant's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: November 15, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court